T.C. Memo. 2006-166


UNITED STATES TAX COURT


MICHAEL KELLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7530-04L.              Filed August 14, 2006.


<u>Asher B. Bearman</u>, <u>Jaret R. Coles</u>, <u>Jennifer A. Gellner</u>, <u>Terri</u>
<u>A. Merriam</u>, and <u>Wendy S. Pearson</u>, for petitioner.

<u>Gregory M. Hahn</u> and <u>Thomas N. Tomashek</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Petitioner filed a petition with this Court
in response to a Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 6330 for 1991, 1992, and

1993.[1]  Pursuant to section 6330(d), petitioner seeks review of respondent's determination.  The sole issue for decision is whether respondent abused his discretion in sustaining the proposed levy action.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first and second stipulations of fact and the attached exhibits are incorporated herein by this reference.[2]  Petitioner resided in Escondido, California, when he filed his petition.

---

[1]  Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Amounts are rounded to the nearest dollar.

[2]  Respondent reserved relevancy objections to 8 exhibits attached to the first stipulation of facts and to 143 exhibits attached to the second stipulation of facts.  Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible.  Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevancy of some exhibits and portions of petitioner's testimony is certainly limited, we find that the exhibits and testimony meet the threshold definition of relevant evidence and are admissible.  The Court will give the exhibits and testimony only such consideration as is warranted by their pertinence to the Court's analysis of petitioner's case.

Respondent also objected to many of the exhibits on the basis of hearsay.  Even if we were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

Petitioner is married.  He has a bachelor of science degree in marine transportation and management and has been employed by Military Sealift Command since June 1982.

Petitioner timely filed Federal income tax returns for 1991, 1992, and 1993 and reported the following:

| Year | Total Income | Total Tax | Tax Withheld | Refund Due |
|------|-------------|-----------|--------------|------------|
| 1991 | $81,574 | $10,662 | $16,746 | $6,084 |
| 1992 | 70,094 | 9,035 | 11,226 | 2,191 |
| 1993 | 107,841 | 21,043 | 22,445 | 1,402 |

Respondent assessed the tax as reported and issued the refunds petitioner claimed.

In 1995, petitioner became a partner in Durham Genetic Engineering 1990-2 J.V. (DGE), a partnership organized and operated by Walter J. Hoyt III (Hoyt).

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships (Hoyt partnerships).  Hoyt also organized, promoted, and operated sheep breeding partnerships.  From 1983 to his subsequent removal by the Tax Court in 2000 through 2003, Hoyt was the tax matters partner of each Hoyt partnership.  From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the IRS.  In 1998,

Hoyt's enrolled agent status was revoked. Hoyt was convicted of various criminal charges in 2001.[3]

Although petitioner did not invest in DGE until 1995, he began claiming Hoyt-related deductions on his 1994 return. Despite receiving from DGE Schedules K-1, Partner's Share of Income, Credits, Deductions, Etc., for 1994 and 1995, petitioner claimed the Hoyt-related deductions on Schedules F, Profit or Loss From Farming. On his 1994 and 1995 returns, petitioner

---

[3] Petitioner asks the Court to take judicial notice of certain "facts" in other Hoyt-related cases and apply judicial estoppel to "facts respondent has asserted in previous [Hoyt-related] litigation". We will do neither.

A judicially noticeable fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Petitioner is not asking the Court to take judicial notice of facts that are not subject to reasonable dispute. Instead, petitioner is asking the Court to take judicial notice of the truth of assertions made by taxpayers and the Commissioner in other Hoyt-related cases. Such assertions are not the proper subject of judicial notice.

The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a position successfully taken by that party in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Among the requirements for judicial estoppel to be invoked, a party's current litigating position must be "clearly inconsistent" with a prior litigating position. Id. at 750-751. Petitioner has failed to identify any clear inconsistencies between respondent's current position and his position in any previous litigation.

reported Schedule F losses of $302,818 and $107,951, respectively.[4]

In December 1995, petitioner filed a Form 1045, Application for Tentative Refund, seeking to carry back a Hoyt-related net operating loss realized in 1994 to 1991, 1992, and 1993. As a result of the carryback, petitioner reported decreases in tax of $10,662, $9,035, and $21,043, respectively. Respondent issued refunds in those amounts, plus interest, on February 5, 1996.

On March 30, 1998, respondent reversed petitioner's tentative net operating loss carrybacks claimed on the Form 1045 and reassessed tax due of $10,662, $9,035, and $21,043 for 1991, 1992, and 1993, respectively, plus interest.[5] To secure payment of the assessed tax, a Federal tax lien was placed on petitioner's property on August 13, 1999.[6]

On October 11, 2000, respondent sent petitioner a settlement proposal. Respondent offered to not impose any section 6662 penalties if petitioner: (1) Conceded that he is not entitled to

---

[4] Petitioner's 1994 and 1995 tax years were before the Court at docket No. 9662-01. See Keller v. Commissioner, T.C. Memo. 2006-131.

[5] The details of the reassessment are not in the record, and the parties do not raise any procedural issues regarding it.

[6] The Federal tax lien is not at issue in the present case. Petitioner received a sec. 6330 hearing with regard to the filing of the lien, and respondent sustained the collection action. However, the details of the lien and the related hearing are not in the record.

claim any of the Hoyt-related expenses claimed on his returns; (2) agreed that the higher rate of interest applicable to tax-motivated transactions will apply; and (3) waived any claim for the abatement of interest. Petitioner did not accept the settlement offer.

On March 10, 2003, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing relating to 1991, 1992, and 1993. On April 8, 2003, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing. Petitioner indicated he would pursue offers-in-compromise based on doubt as to collectibility and effective tax administration and would provide financial information upon request.

On January 21, 2004, a section 6330 hearing was held by phone between Settlement Officer Kathleen Lee (Ms. Lee) and Terri A. Merriam (Ms. Merriam), petitioner's attorney. Ms. Merriam indicated that petitioner would most likely be able to pay the tax in full, and thus he wished to pursue only an effective tax administration offer-in-compromise. However, Ms. Merriam did not provide Ms. Lee with Form 656, Offer in Compromise, or with Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On February 4, 2004, Ms. Merriam sent Ms. Lee a letter indicating that petitioner had not yet completed a Form 433-A, but one would be obtained "shortly". Because petitioner would

likely be able to pay his tax liability in full, Ms. Merriam asked Ms. Lee to consider the effective tax administration offer-in-compromise. The letter set out in detail petitioner's position regarding an effective tax administration offer-in-compromise, but a Form 656 was not enclosed.

On March 30, 2004, respondent sent petitioner a notice of determination sustaining the proposed collection action. Respondent stated that "We are unable to determine whether or not an Offer in Compromise is the appropriate resolution because you failed to provide the financial information necessary to make a collection determination."

In response to the notice of determination, petitioner filed his petition with this Court on May 5, 2004. Petitioner argued that respondent erred by: (1) Determining that petitioner did not qualify for an effective tax administration offer-in-compromise; and (2) failing to allow petitioner sufficient time to provide additional information.[7]

This case was initially calendared for trial beginning January 24, 2005. However, the parties' joint motions for continuance and remand were granted at calendar call. The case was remanded to respondent's Appeals Office to give petitioner an

---

[7] Petitioner also alleged that respondent erred by not finding that there was doubt as to collectibility. However, petitioner did not present information to substantiate this claim and does not argue it on brief. We conclude that petitioner has abandoned this argument.

opportunity to present information that he did not present in the first section 6330 hearing.  On remand, the case was assigned to Settlement Officer John Vander Linden (Mr. Vander Linden).

In connection with the second section 6330 hearing, petitioner provided respondent with Forms 433-A and 656 that indicated that petitioner was requesting an offer-in-compromise based only on effective tax administration.[8]  Petitioner offered to compromise his outstanding tax liabilities not only for the years subject to the proposed collection action, but also for those arising from his 1994, 1995, and 1996 tax years.[9] Petitioner offered to pay $85,344 to compromise an estimated income tax liability of $228,000, inclusive of penalties and interest.  The $85,344 represented petitioner's total income tax liability, exclusive of penalties or interest.  However, petitioner's offer-in-compromise did not set forth any grounds on which an effective tax administration offer could be accepted.

The second section 6330 hearing was held on March 14, 2005. Because the offer-in-compromise did not include any grounds for accepting the offer, Mr. Vander Linden considered Ms. Merriam's

---

[8]  Petitioner actually completed two offers-in-compromise, one for 1991-95 and the other for 1996.  Petitioner's arguments are not particular to one offer or the other, and respondent considered both together.  To avoid confusion, we refer to the offers-in-compromise as a single offer.

[9] At the time of the second sec. 6330 hearing, the taxes, penalties, and interest for petitioner's 1994, 1995, and 1996 tax years were unassessed.

February 4, 2004, letter outlining petitioner's position.  In his review of this case, Mr. Vander Linden considered all of the information and arguments presented by petitioner at the hearing, in the letter, and contained in the administrative record.

On May 10, 2005, respondent sent petitioner a Supplemental Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (supplemental notice of determination). Respondent determined that:  (1) Petitioner did not qualify for an effective tax administration offer-in-compromise; and (2) any compromise relating to 1994, 1995, and 1996 could not be considered because the taxes, penalties, and interest for those years had not been assessed.  As a result, respondent sustained the proposed collection action.

## OPINION

Section 7122(a) provides that "the Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's discretion.  Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations set forth three grounds for the compromise of a tax liability:  (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.  As pertinent here,

the Secretary may compromise a tax liability on the ground of effective tax administration when: (1) Exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner; and (2) compromise of the liability would not undermine compliance by taxpayers with the tax laws.[10]

Petitioner proposed an effective tax administration offer-in-compromise, arguing that exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner. Respondent rejected petitioner's argument and determined that "the offers in compromise under ETA provisions are [not] appropriate given the circumstances of this case."

Because the underlying tax liability is not at issue, our review under section 6330 is for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). This standard does not ask us to decide whether in our own opinion petitioner's offer-in-compromise should have been accepted, but whether respondent's rejection of the offer was arbitrary, capricious, or without

---

[10] The regulations also provide that the Secretary may compromise a liability on the ground of effective tax administration when collection of the full liability will create economic hardship. See sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioner does not argue that collection of the full liability will create economic hardship.

sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Fowler v. Commissioner, T.C. Memo. 2004-163.

A.    Exceptional Circumstances

Petitioner asserts that "There are so many unique and equitable facts in this case that this case is an exceptional circumstance", and respondent abused his discretion by not accepting those facts as grounds for an offer-in-compromise.  In support of his assertion, petitioner argues that:  (1) The longstanding nature of this case justifies acceptance of the offer-in-compromise; (2) respondent's reliance on an example in the Internal Revenue Manual was misplaced; and (3) respondent failed to consider petitioner's other "equitable facts".

1.    Longstanding Case

Petitioner asserts that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties and interest which would otherwise apply.  Petitioner argues that, because this is a longstanding case, respondent abused his discretion by failing to accept his offer-in-compromise.

Petitioner's argument is essentially the same argument considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, supra at 711-712.  See also Barnes v. Commissioner, T.C. Memo. 2006-150.  We reject petitioner's argument for the same reasons stated by the Court of Appeals.  We add that petitioner's counsel participated in the

appeal in Fargo v. Commissioner, supra, as counsel for the amici. On brief, petitioner suggests that the Court of Appeals knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioner), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven.  We do not read the opinion of the Court of Appeals in Fargo to support that conclusion.  See Barnes v. Commissioner, supra.

Respondent's rejection of petitioner's longstanding case argument was not arbitrary or capricious.

### 2.   The Internal Revenue Manual Example

Petitioner argues that respondent erred when he determined that petitioner was not entitled to relief based on Example 2 in Internal Revenue Manual section 5.8.11.2.2.  Petitioner asserts that many of the facts in this case were not present in the example and, therefore, any reliance on the example was misplaced.  Petitioner's argument is not persuasive.

Internal Revenue Manual section 5.8.11.2.2 discusses effective tax administration offers-in-compromise based on equity and public policy grounds and provides the Example 2:

> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. Immediately upon investing, the taxpayer claimed investment tax credits that significantly reduced or eliminated the tax liabilities for the years 1981 through 1983.  In 1984, the IRS opened an audit of the partnership under the provisions of the Tax Equity and

Fiscal Responsibility Act of 1982 (TEFRA). After issuance of the Final Partnership Administrative Adjustment (FPAA), but prior to any proceedings in Tax Court, the IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court. The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing that TEFRA is unfair and that the liabilities accrued in large part due to the actions of the Tax Matters Partner (TMP) during the audit and litigation. Neither the operation of the TEFRA rules nor the TMP's actions on behalf of the taxpayer provide grounds to compromise under the equity provision of paragraph (b)(4)(i)(B) of this section. Compromise on those grounds would undermine the purpose of both the penalty and interest provisions at issue and the consistent settlement principles of TEFRA. * * *

1 Administration, Internal Revenue Manual (CCH), sec.

5.8.11.2.2(3), at 16,378.

In the supplemental notice of determination, respondent

states:

We have also considered the provision of the Internal Revenue Manual (IRM) Section 5.8.11.2.2, Example 2. This example involves circumstances similar to the circumstances presented in the taxpayer's case. From this example, it is clear the government does not consider on [sic] offers like this to acceptable [sic] under ETA considerations.

We agree with respondent that the example presents similar

circumstances to those in petitioner's case. The similarities

include: Petitioner's outstanding tax liability is related to

his investment in DGE, a TEFRA partnership; respondent proposed a settlement offer in 2000 in which respondent offered to forgo penalties; petitioner rejected the settlement offer; petitioner now proposes a compromise on terms more beneficial than those in the settlement offer; and petitioner argues that the penalties and interest have accumulated as a result of the length of the case.

Petitioner is correct in asserting that all of the facts in his case are not present in the example. However, it is unreasonable to expect that facts in an example be identical to facts of a particular case before the example can be relied upon. The Internal Revenue Manual example was only one of many factors respondent considered. Given the similarities to petitioner's case, respondent's reliance on that example was not arbitrary or capricious.

3.    Petitioner's Other "Equitable Facts"

Petitioner argues that respondent abused his discretion by failing to consider the other "equitable facts" of this case. Petitioner's "equitable facts" include reference to:  (1) Petitioner's reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[11] (2) petitioner's reliance on Hoyt's enrolled agent status;

_____

[11]  Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships.  This Court found in favor of the investors on several issues, stating that "the transaction in issue should be
                                                        (continued...)

(3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioner; and (5) other letters and cases.  The basic thrust of petitioner's argument is that he was defrauded by Hoyt and that, if he is held responsible for penalties and interest incurred as a result of his investment in a tax shelter, it would be inequitable and against public policy.  Petitioner's argument is not persuasive.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples.  See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs.  The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years.  The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions.  Neither example bears any resemblance to this case. Unlike the exceptional circumstances exemplified in the regulations, petitioner's situation is neither unique nor

_____

[11](...continued)
respected for Federal income tax purposes."  Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties.  This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth and Tenth Circuits.  See, e.g., Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275; Sanders v. Commissioner, T.C. Memo. 2005-163; Hansen v. Commissioner, T.C. Memo. 2004-269.

exceptional in that his situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s.  See Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioner has a more sympathetic case than the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception".  Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth and Tenth Circuits from affirming our decisions to that effect.  See Mortensen v. Commissioner, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Mr. Vander Linden testified that he considered all of Ms. Merriam's and petitioner's assertions, but that the "equitable facts" did not affect his final determination.  Mr. Vander Linden also testified that he considered Ms. Merriam's February 4, 2004 letter, in which Ms. Merriam addresses petitioner's "equitable facts" at length.  Additionally, Mr. Vander Linden read and considered many of the cases cited in that letter.  Likewise, the

supplemental notice of determination reflects consideration of the arguments raised in the letter.

The mere fact that petitioner's "equitable facts" did not persuade respondent to accept petitioner's offer-in-compromise does not mean that those assertions were not considered. The supplemental notice of determination and Mr. Vander Linden's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioner's case. We find that respondent's determination that the "equitable facts" did not justify acceptance of petitioner's offer-in-compromise was not arbitrary or capricious, and thus was not an abuse of discretion.

B.  Compromise of Penalties and Interest in an Effective Tax Administration Offer-in-Compromise

Petitioner advances a number of arguments focusing on his assertion that respondent determined that penalties and interest could not be compromised in an effective tax administration offer-in-compromise. Petitioner argues that such a determination is contrary to legislative history and is therefore an abuse of discretion. These arguments are not persuasive.

The regulations under section 7122 provide that "If the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil * * * liability arising under the internal revenue laws". Sec. 301.7122-1(a)(1), Proced. & Admin. Regs. In

other words, the Secretary may compromise a taxpayer's tax liability if he determines that grounds for a compromise exist. If the Secretary determines that grounds do not exist, the amount offered (or the way in which the offer is calculated) need not be considered.

Petitioner's arguments regarding the compromise of penalties and interest do not relate to whether there are grounds for a compromise. Instead, these arguments go to whether the amount petitioner offered to compromise his tax liability was acceptable. As addressed above, respondent's determination that the facts and circumstances of petitioner's case did not warrant acceptance of his offer-in-compromise was not arbitrary or capricious and was thus not an abuse of discretion. Because no grounds for compromise exist, we need not address whether respondent can or should compromise penalties and interest in an effective tax administration offer-in-compromise.

C.   Petitioner's Other Arguments

   1.   Information Sufficient for the Court To Review
        Respondent's Determination

Petitioner argues that respondent failed to provide the Court with sufficient information "so that this Court can conduct a thorough, probing, and in-depth review of respondent's determinations." Petitioner's argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); Welch

v. Helvering, 290 U.S. 111, 115 (1933).[12]  The burden was on petitioner to show that respondent abused his discretion.  The burden was not on respondent to provide enough information to show that he did not abuse his discretion.  Nevertheless, we find that we had more than sufficient information to review respondent's determination.

2.  Unassessed Years

Petitioner argues that respondent abused his discretion by failing to consider his offer-in-compromise as it relates to petitioner's unassessed tax years, 1994, 1995, and 1996.  Respondent has proposed collection action for only 1991, 1992, and 1993.  The ultimate issue in this case is whether respondent may proceed with the proposed collection action.  Whether respondent can or should compromise petitioner's tax liability for years outside of those for which collection action has been proposed is not relevant to our determination.  Petitioner's argument is without merit.

---

[12]  While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case because respondent's examination of petitioner's returns did not commence after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

3.  Efficient Collection Versus Intrusiveness

Petitioner argues that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C).  Petitioner's argument is not supported by the record.

Petitioner has an outstanding tax liability.  In his second section 6330 hearing, petitioner proposed only an effective tax administration offer-in-compromise.  In the notice, respondent states:  "the only other alternative is to pay his accounts by means of an installment agreement.  Through his authorized representative he has indicated he does not want to consider this alternative at this time."  Respondent concludes:

> Since we are unable to resolve his accounts by mutually
> agreeable collection alternatives, the only alternative
> is to sustain the levy action proposed to collect his
> accounts.  This action balances the need for efficient
> collection of taxes with the legitimate concern of the
> taxpayer that the collection action be no more
> intrusive than necessary.

The supplemental notice of determination indicates that respondent sought to collect petitioner's outstanding tax liability through less intrusive means (an installment agreement), but petitioner rejected it.  Because no other collection alternatives were proposed, there were not less intrusive means for respondent to consider.  We find that

respondent balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection be no more intrusive than necessary.

D.    Conclusion

Petitioner has not shown that respondent's determination was arbitrary or capricious, or without sound basis in fact or law. For all of the above reasons, we hold that respondent's determination was not an abuse of discretion, and respondent may proceed with the proposed collection action.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be
entered for respondent.