T.C. Memo. 2007-24


UNITED STATES TAX COURT


DANIEL O. ABELEIN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24804-04L.            Filed February 6, 2007.


Terri A. Merriam, for petitioner.

Gregory M. Hahn and Thomas N. Tomashek, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, Judge:  Petitioner filed a petition with this Court in response to a Notice of Determination Concerning Collection Action(s) Under Section 6330 (notice of determination) for 1982 through 1986.[1]  Pursuant to section 6330(d), petitioner seeks

_____

[1]  Unless otherwise indicated, all section references are to
(continued...)

review of respondent's determination. The issue for decision is whether respondent abused his discretion in sustaining the proposed collection action.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The first, second, third, fourth, and fifth stipulations of fact and the attached exhibits are incorporated herein by this reference.[3]

---

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] Petitioner also disputes respondent's determination that he is liable for the increased rate of interest on tax-motivated transactions under sec. 6621(c). As to this dispute, the parties filed a stipulation to be bound by the Court's determination in Ertz v. Commissioner, T.C. Memo. 2007-15, which involves a similar issue.

[3] Respondent reserved relevancy objections to many of the exhibits attached to the stipulations of fact. Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevance of some exhibits is certainly limited, we find that the exhibits meet the threshold definition of relevant evidence and are admissible. The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of petitioner's case.

Respondent also objected to many of the exhibits on the basis of hearsay. Even if we were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

Petitioner resided in Boring, Oregon, when he filed his petition. Petitioner has a highschool education, worked as an electrician for many years, and is now self-employed as a general contractor building houses in the Greater Portland, Oregon, area. At the time of trial, petitioner was 55 years old.

In 1985, petitioner became a partner in Durham Genetic Engineering, Ltd. 1985-1 (DGE 85-1) and in Shorthorn Genetic Engineering, Ltd. 1985-1 (SGE 85-1), cattle breeding partnerships organized and operated by Walter J. Hoyt III (Hoyt).[4]

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships. Hoyt also organized, promoted, and operated sheep breeding partnerships. From 1983 to his subsequent removal by the Tax Court in 2000 through 2003, Hoyt was the tax matters partner of each Hoyt partnership. From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the Internal Revenue Service (IRS). In

---

[4] The parties stipulated that petitioner became a partner in DGE 85-1 and SGE 85-1 in 1984. However, petitioner testified, and the rest of the record indicates, that he became a partner in 1985.

Petitioner was also a partner in other Hoyt-related partnerships identified as "DGE 1986-A" and "FF #4". The details of these partnerships are not in the record. Though unclear, it appears that all adjustments made to petitioner's income tax liability for 1982-86 were attributable to his involvement in DGE 85-1 and SGE 85-1 only.

1998, Hoyt's enrolled agent status was revoked. Hoyt was convicted of various criminal charges in 2000.[5]

Beginning in 1985 until at least 1986, petitioner claimed losses and credits on his Federal income tax returns arising from his involvement in the Hoyt partnerships. Petitioner also carried back unused investment credits to 1982, 1983, and 1984. As a result of these losses and credits, petitioner reported overpayments of tax for 1982 through 1986 and received refunds in the amounts claimed.

---

[5] Petitioner asks the Court to take judicial notice of certain "facts" in other Hoyt-related cases and apply judicial estoppel to "facts respondent has asserted in previous [Hoyt-related] litigation". We do neither.

A judicially noticeable fact is one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Petitioner is not asking the Court to take judicial notice of facts that are not subject to reasonable dispute. Instead, petitioner is asking the Court to take judicial notice of the truth of assertions made by taxpayers and the Commissioner in other Hoyt-related cases. Such assertions are not the proper subject of judicial notice.

The doctrine of judicial estoppel prevents a party from asserting in a legal proceeding a claim that is inconsistent with a position successfully taken by that party in a previous proceeding. New Hampshire v. Maine, 532 U.S. 742, 749 (2001). Among the requirements for judicial estoppel to be invoked, a party's current litigating position must be "clearly inconsistent" with a prior litigating position. Id. at 750-751. Petitioner has failed to identify any clear inconsistencies between respondent's current position and his position in any previous litigation.

Respondent issued notices of final partnership administrative adjustments (FPAAs) to DGE 85-1 and SGE 85-1 for their 1985 and 1986 taxable years.[6]  After completion of the partnership-level proceedings, respondent determined deficiencies in petitioner's income tax for his 1982 through 1986 tax years.

On January 24, 2002, respondent issued petitioner a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing (final notice).  The final notice included petitioner's outstanding tax liabilities for 1982 through 1986.

On February 12, 2002, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing.  Petitioner argued that the proposed levy was inappropriate and that an offer-in-compromise should be accepted.

Petitioner's case was assigned to Settlement Officer Linda Cochran (Ms. Cochran).  Ms. Cochran scheduled a telephone section 6330 hearing for March 23, 2004.  During the hearing, petitioner's representative, Terri A. Merriam (Ms. Merriam), requested that petitioner be given more time to submit information to be considered.  Ms. Cochran extended petitioner's deadline for submitting information to be considered to April 6, 2004.

---

[6]  The FPAAs and other information specific to DGE 85-1's and SGE 85-1's partnership-level proceedings are not in the record.

On April 5, 2004, petitioner submitted to Ms. Cochran a Form 656, Offer in Compromise, a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, one letter explaining the offer amount, and three letters setting out in detail petitioner's position regarding the offer-in-compromise. Petitioner's letters included several exhibits.

The Form 656 indicated that petitioner was seeking an effective tax administration offer-in-compromise based on public policy and equity grounds. Petitioner offered to pay $129,230 to compromise his outstanding tax liabilities for 1982 through 1996.[7]

On the Form 433-A, petitioner reported assets worth approximately $420,000 and outstanding liabilities of approximately $264,000. Petitioner also reported gross monthly income of $21,728 and monthly living expenses of $14,382.

In the letter explaining the offer amount, petitioner stated that he was offering to pay $129,230 "for all Hoyt-related years to be paid in twenty-four months * * *. The amount accounts for all the tax liability for 1982 through 1998 * * * and regular interest through April 15, 1993. This offer assumes that no Tax Motivated Transaction (TMT) interest is imposed".

---

[7] The details of petitioner's 1986-96 tax years are not in the record.

In the remaining three letters, petitioner alleged that he was a victim of Hoyt's fraud and asserted various arguments regarding the appropriateness of an offer-in-compromise.

On May 21, 2004, petitioner submitted another letter to Ms. Cochran, which included 42 exhibits not provided with the previous letters.

On November 23, 2004, respondent issued petitioner a notice of determination. Respondent determined that petitioner had: (1) Total net realizable equity in his assets of $156,053; (2) an amount collectible from future income of $1,243,381,[8] and (3) a reasonable collection potential of $1,415,173. Respondent determined that petitioner was not entitled to an effective tax administration offer-in-compromise based on public policy or equity ground because the case "fails to meet the criteria for such consideration". Respondent determined that petitioner did not offer an acceptable collection alternative and that all requirements of law and administrative procedure had been met. Respondent concluded that the proposed collection action could proceed.

In response to the notice of determination, petitioner filed a petition with this Court on December 29, 2004.

---

[8] Respondent determined that petitioner had monthly disposable income of $15,739 and multiplied that amount by 79, the number of months remaining on the collection statute.

## OPINION

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws". Whether to accept an offer-in-compromise is left to the Secretary's discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122(a) set forth three grounds for the compromise of a tax liability: (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Doubt as to liability and doubt as to collectibility are not at issue in this case.[9]

As pertinent here, the Secretary may compromise a tax liability on the ground of effective tax administration when: (1) Exceptional circumstances exist such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner; and (2) compromise of the liability would not undermine compliance by

---

[9] While petitioner disputes his liability for sec. 6621(c) interest, see supra note 2, he did not raise doubt as to liability as a grounds for compromise.

taxpayers with the tax laws.[10]  Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

Petitioner proposed an offer-in-compromise based on effective tax administration, arguing that exceptional circumstances existed such that collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner.  Respondent determined that petitioner's offer-in-compromise did not meet the criteria for an effective tax administration offer-in-compromise.

Because the underlying tax liability is not at issue, our review under section 6330 is for abuse of discretion.  See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000).  This standard does not ask us to decide whether in our own opinion petitioner's offer-in-compromise should have been accepted, but whether respondent's rejection of the offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law.  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Keller v. Commissioner, T.C. Memo. 2006-166; Fowler v. Commissioner, T.C. Memo. 2004-163.

---

[10]  The regulations also provide that the Secretary may compromise a liability on the ground of effective tax administration when collection of the full liability will create economic hardship.  See sec. 301.7122-1(b), Proced. & Admin. Regs.  While petitioner disputes Ms. Cochran's determination of his reasonable collection potential, he does not argue that collection of the full liability would create economic hardship.

A.    Exceptional Circumstances

Petitioner asserts that "There are so many unique and equitable facts in this case that this case is an exceptional circumstance" and respondent abused his discretion by not accepting those facts as grounds for an offer-in-compromise.  In support of his assertion, petitioner argues:  (1) The longstanding nature of this case justifies acceptance of the offer-in-compromise; (2) respondent's reliance on an example in the Internal Revenue Manual (IRM) was improper; and (3) respondent failed to consider petitioner's other "equitable facts".

1.    Longstanding Case

Petitioner asserts that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties and interest which would otherwise apply.  Petitioner argues that, because this is a longstanding case, respondent abused his discretion by failing to accept their offer-in-compromise.

Petitioner's argument is essentially the same considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, supra at 711-712.  See also Keller v. Commissioner, supra; Barnes v. Commissioner, T.C. Memo. 2006-150.  We reject petitioner's argument for the same reasons stated by the Court of Appeals.  We add that petitioner's counsel participated in the appeal in Fargo as counsel for the amici.  On

brief, petitioner suggests that the Court of Appeals knowingly wrote its opinion in <u>Fargo</u> in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioner), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven.  We do not read the opinion of the Court of Appeals in <u>Fargo</u> to support that conclusion.  See <u>Keller v. Commissioner</u>, <u>supra</u>; <u>Barnes v. Commissioner</u>, <u>supra</u>.

Respondent's rejection of petitioner's longstanding case argument was not arbitrary or capricious.

2.   The IRM Example

Petitioner argues that respondent erred when he determined that petitioner was not entitled to relief based on the second example in IRM section 5.8.11.2.2(3).  Petitioner asserts that many of the facts in this case were not present in the example, and, therefore, any reliance on the example was misplaced.  Petitioner's argument is not persuasive.

IRM section 5.8.11.2.2(3) discusses effective tax administration offers-in-compromise based on equity and public policy grounds and states in the second example:

> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. Immediately upon investing, the taxpayer claimed investment tax credits that significantly reduced or eliminated the tax liabilities for the years 1981 through 1983.  In 1984, the IRS opened an audit of the partnership under the provisions of the Tax Equity and

Fiscal Responsibility Act of 1982 (TEFRA). After issuance of the Final Partnership Administrative Adjustment (FPAA), but prior to any proceedings in Tax Court, the IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court. The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing that TEFRA is unfair and that the liabilities accrued in large part due to the actions of the Tax Matters Partner (TMP) during the audit and litigation. Neither the operation of the TEFRA rules nor the TMP's actions on behalf of the taxpayer provide grounds to compromise under the equity provision of paragraph (b)(4)(i)(B) of this section. Compromise on those grounds would undermine the purpose of both the penalty and interest provisions at issue and the consistent settlement principles of TEFRA. * * *

1 Administration, Internal Revenue Manual (CCH), sec. 5.8.11.2.2(3), at 16,378. We agree with respondent that the example presents similar circumstances to those in petitioner's case, including: Petitioner invested in TEFRA partnerships in the early 1980s; petitioner's outstanding tax liability is related to his investment in the partnerships; FPAAs were issued to the partnerships; after several years of litigation, Tax Court decisions upheld the vast majority of the deficiencies asserted in the FPAAs; and petitioner argues that interest has accumulated

as the result of delays by and other actions of the tax matters partner.

Petitioner is also correct in asserting that not all the facts in his case are present in the example. However, it is unreasonable to expect that facts in an example be identical to facts of a particular case before the example can be relied upon. The IRM example was only one of many factors respondent considered. Given the similarities to petitioner's case, respondent's reliance on that example was not arbitrary or capricious.

3. Petitioner's Other "Equitable Facts"

Petitioner argues that respondent abused his discretion by failing to consider the other "equitable facts" of this case. Petitioner's "equitable facts" include reference to: (1) Petitioner's reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[11] (2) petitioner's reliance on Hoyt's enrolled agent status;

_____

[11] Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships. This Court found in favor of the investors on several issues, stating that "the transaction in issue should be respected for Federal income tax purposes." Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties. This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits. See, e.g., Hansen v. Commissioner, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

(3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioner; and (5) other letters and cases. The basic thrust of petitioner's argument is that he was defrauded by Hoyt and that, if he were held responsible for penalties and interest incurred as a result of their investment in a tax shelter, it would be inequitable and against public policy. Petitioner's argument is not persuasive.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. Unlike the exceptional circumstances exemplified in the regulations, petitioner's situation is neither unique nor exceptional in that his situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s. See Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioner has a more sympathetic case than

the taxpayers in <u>Fargo v. Commissioner</u>, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception". Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth, Ninth, and Tenth Circuits from affirming our decisions to that effect. See <u>Hansen v. Commissioner</u>, 471 F.3d 1021 (9th Cir. 2006), affg. T.C. Memo. 2004-269; <u>Mortensen v. Commissioner</u>, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; <u>Van Scoten v. Commissioner</u>, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Ms. Cochran testified that she considered all of Ms. Merriam's and petitioner's assertions, including the numerous letters and exhibits. Nevertheless, Ms. Cochran determined that petitioner did not qualify for an offer-in-compromise.

The mere fact that petitioner's "equitable facts" did not persuade respondent to accept their offer-in-compromise does not mean that those assertions were not considered. The notice of determination and Ms. Cochran's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioner's case. We find that respondent's determination that the "equitable facts" did not justify acceptance of petitioner's offer-in-compromise was not

- 16 -

arbitrary or capricious, and thus it was not an abuse of discretion.

We also find that compromising petitioner's case on grounds of public policy or equity would not enhance voluntary compliance by other taxpayers.  A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of transactions into which they enter.  It would be particularly inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter.  Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws.  See Barnes v. Commissioner, supra.

B.   Petitioner's Other Arguments

1.   Compromise of Penalties and Interest in an Effective Tax Administration Offer-in-Compromise

Petitioner advances a number of arguments focusing on his assertion that respondent determined that penalties and interest could not be compromised in an effective tax administration offer-in-compromise.  Petitioner argues that such a determination is contrary to legislative history and is therefore an abuse of discretion.  These arguments are not persuasive.

The regulations under section 7122 provide that "If the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil * * * liability arising under the internal revenue laws". Sec. 301.7122-1(a)(1), Proced. & Admin. Regs. In other words, the Secretary may compromise a taxpayer's tax liability if he determines that grounds for a compromise exist. If the Secretary determines that grounds do not exist, the amount offered (or the way in which the offer is calculated) need not be considered.

Petitioner's arguments regarding the compromise of penalties and interest do not relate to whether there are grounds for a compromise. Instead, these arguments go to whether the amount petitioner offered to compromise his tax liability was acceptable. As addressed above, respondent's determination that the facts and circumstances of petitioner's case did not warrant acceptance of their offer-in-compromise was not arbitrary or capricious and was thus not an abuse of discretion. Because no grounds for compromise exist, we need not address whether respondent can or should compromise penalties and interest in an effective tax administration offer-in-compromise. See Keller v. Commissioner, supra.

### 2. Information Sufficient for the Court To Review Respondent's Determination

Petitioner argues that respondent failed to provide the Court with sufficient information "so that this Court can conduct a thorough, probing, and in-depth review of respondent's determinations." Petitioner's argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[12] The burden was on petitioner to show that respondent abused his discretion. The burden was not on respondent to provide enough information to show that he did not abuse his discretion. Nevertheless, we find that we had more than sufficient information to review respondent's determination.

### 3. Deadline for Submission of Information

Petitioner argues that Ms. Cochran abused her discretion by not allowing his counsel additional time to submit information to be considered. Petitioner's argument is not supported by the record.

---

[12] While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case because respondent's examination of petitioner's returns did not commence after July 22, 1998. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

Petitioner asserts that he was "initially only given four weeks" to provide all information. However, he ignores the fact that Ms. Cochran granted his requested extension and allowed him until April 6, 2004, to submit information. Additionally, petitioner has not identified any documents or other information that he believes Ms. Cochran should have considered but that he was unable to produce because of the deadline for submission. Given the thoroughness and the amount of information submitted, it is unclear why petitioner needed additional time. We do not believe that Ms. Cochran abused her discretion by establishing a deadline for the submission of information.

### 4. Efficient Collection Versus Intrusiveness

Petitioner argues that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). Petitioner's argument is not supported by the record.

Petitioner has an outstanding tax liability. In his section 6330 hearing, petitioner proposed only an offer-in-compromise. Because no other collection alternatives were proposed, there were not less intrusive means for respondent to consider. We find that respondent balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection be no more intrusive than necessary.

C.   Conclusion

Petitioner has not shown that respondent's determination was arbitrary or capricious, or without sound basis in fact or law. For all of the above reasons, we hold that respondent's determination was not an abuse of discretion, and respondent may proceed with the proposed collection action.

In reaching our holdings herein, we have considered all arguments made, and, to the extent not mentioned above, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be

entered for respondent.