T.C. Memo. 2007-312


UNITED STATES TAX COURT


DAVID L. SAMUEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8431-05L.                    Filed October 15, 2007.


P filed a petition for judicial review in response
to R's determination to proceed with collection by lien
and/or levy of assessed income tax liabilities, plus
additions to tax and interest, for 1996-2002. R's
settlement officer rejected P's offer-in-compromise
because it was not a viable alternative to collection.
The settlement officer, applying guidelines established
by the Internal Revenue Manual, determined that P
should include in the amount of his offer-in-compromise
the value of certain "dissipated assets", which,
because of the dissipation, became unavailable for
payment of P's delinquent income tax obligation. The
settlement officer required this inclusion,
notwithstanding that some of the assets had been used
for proper purposes.

Held: R's rejection of P's offer-in-compromise was an abuse of discretion, and this case will be remanded to the IRS Appeals Office so that P may make a revised offer reflecting a reduced amount of dissipated assets.

William A. Neilson and Douglas L. Salzer, for petitioner.

Linda A. Neal, for respondent.

MEMORANDUM OPINION

NIMS, Judge: This case arises from a petition for judicial review filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. The issue for decision is whether respondent's rejection of petitioner's offer-in-compromise was an abuse of discretion.

Background

This case was submitted fully stipulated pursuant to Rule 122, and the facts are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference. At the time he filed the petition, petitioner resided in Louisiana.

Petitioner is a practicing physician specializing in adult and pediatric urology. He operates his own medical practice, David L. Samuel, M.D., A Professional Medical Corporation. Petitioner is also a partner in Pontchartrain Lithotripsy, LLC. Prior to starting his own practice, petitioner practiced with another urologist until sometime in 2002.

Beginning on February 3, 2003, petitioner began filing delinquent individual income tax returns for 1996-2002. The dates on which petitioner filed the returns and the Internal Revenue Service (IRS) assessed the taxes due are as follows:

| Year | Date Return Filed | Date Taxes Assessed |
|------|-------------------|---------------------|
| 1996 | January 26, 2004 | March 8, 2004 |
| 1997 | February 3, 2003 | March 24, 2003 |
| 1998 | February 3, 2003 | March 31, 2003 |
| 1999 | February 3, 2003 | March 24, 2003 |
| 2000 | February 3, 2003 | March 3, 2003 |
| 2001 | February 3, 2003 | March 3, 2003 |
| 2002 | October 3, 2003 | November 3, 2003 |

The so-called "TXMODA" computer transcripts of petitioner's IRS accounts for each of these years show adjusted gross income posted from petitioner's tax returns as follows:

| Year | AGI |
|------|-----|
| 1996 | $187,108 |
| 1997 | 220,250 |
| 1998 | 205,492 |
| 1999 | 303,558 |
| 2000 | 140,213 |
| 2001 | 177,566 |
| 2002 | 211,991 |

Petitioner did not remit any payments for the amounts due on these returns when they were filed.

Respondent assessed the taxes shown on the above returns. Calculated as of January 1, 2005, petitioner owed in excess of $773,368 for the tax years 1996-2002, inclusive.

In October 2004, petitioner filed his 2003 individual income tax return. Withheld taxes for 2003 exceeded total tax by $8,016. The excess withheld taxes combined with an estimated tax payment of $15,600 resulted in a $23,616 overpayment of tax for 2003. This overpayment was applied to petitioner's 1996 unpaid tax liability.

Respondent sent the following collection notices to petitioner for unpaid Federal income taxes: Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated October 2, 2003, for the 1997-2001 tax years; a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, dated February 10, 2004, for 2002; a Final Notice - Notice of Intent to Levy and Notice of Your Right to a Hearing, dated March 8, 2004, for 1996; and a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320, dated April 1, 2004, for 1996. (Neither party has explained this 1996 discrepancy.) Petitioner timely requested a hearing in response to each of these Notices. On each Form 12153, Request for a Collection Due Process Hearing, petitioner stated that he was preparing a Form

433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, and a Form 433-B, Collection Information Statement for Businesses, in order to submit an offer-in-compromise for his tax liabilities.

On July 8, 2004, petitioner submitted a Form 656, Offer in Compromise, along with two different Forms 433-A (both dated June 1, 2004) and a Form 433-B for his professional corporation. Petitioner submitted the offer on the basis of "doubt as to collectibility". Petitioner was not then, and is not now, contesting his 1996-2002 income tax liabilities. Petitioner offered to pay $30,000 to compromise his 1996-2002 tax liabilities. This was a short-term deferred payment offer payable in monthly installments of $1,250 for 24 months.

On one of the Forms 433-A, petitioner indicated that he operated David L. Samuel, M.D., P.C., and identified this corporation as his employer for the prior 4 years. Petitioner listed his assets as $1,409.89 in a checking account, a house valued at $330,000 (with a loan balance of $322,025), and furniture/personal effects worth $10,000. Petitioner indicated that he was the plaintiff in a $25,000 civil lawsuit for unpaid wages. Petitioner showed his only source of income as monthly wages of $7,963. Petitioner reported monthly expenses of: $976 for food, clothing, and miscellaneous (noted as the statutory allowance); $1,024 for housing and utilities (noted as the

statutory allowance); $50 for health care; $2,470 for taxes; $2,750 for court-ordered payments (child support); and $250 for other expenses (later identified as attorney's fees for representation in the instant matter). The second Form 433-A contained the same information as the first, except that it reported gross monthly wages of $8,144.10 and monthly medical expenses of $41.20.

The Form 433-B for David L. Samuel, M.D., P.C., reflected that petitioner was the only shareholder. The total accounts/notes receivable of the medical corporation was shown as $87,388.73. The only other assets disclosed on the Form 433-B were $613.74 in a bank account, $200.22 of cash on hand, and office furniture valued at $4,000. In the "Investments" section, petitioner listed one share of Pontchartrain Lithotripsy, LLC, with a value of $10,000. Total monthly income for petitioner's professional corporation consisted of $26,435.20 in gross receipts and $4,416 in dividends for a total of $30,851.20. Petitioner reported monthly expenses totaling $33,523.93 for the professional corporation.

Petitioner's offer-in-compromise was accepted for processing and forwarded to respondent's New Orleans Compliance Office for investigation.

Petitioner requested a face-to-face hearing at the New Orleans Appeals Office, to which the IRS agreed. The face-to-

face hearing was conducted in New Orleans on January 31, 2005. During the face-to-face hearing, petitioner disclosed that he sold an interest in Fairway Medical Center (FMC) in June 2003, for $108,000 and refinanced his home in September 2003, for a net cash payment to him of $25,158. Petitioner also discussed his ownership interest in Pontchartrain Lithotripsy, LLC, from which he reported $51,922 of income in 2003, but which he designated on the Form 433-B as a $10,000 investment held by his professional corporation. Petitioner explained that his $10,000 initial investment in Sabine Lithotripsy, LLC (which dissolved into four entities, one of which was Pontchartrain Lithotripsy, LLC) entitles him to access a medical mobile unit for use in his medical practice. He also receives monthly income receipts, which he said are deposited into his business account. After the hearing, petitioner provided a list of the monthly income received from Pontchartrain Lithotripsy. This income totaled $61,440 for 2004.

Petitioner clarified other issues at the hearing. He indicated that the lower of the two monthly income amounts on the different Forms 433-A, $7,963, should be used for consideration of the offer-in-compromise. Petitioner asserted that his interest in his professional corporation is limited to the value of the medical and office equipment (which he estimated to be $3,630) and that a patient list in the urology field has little

or no value. Petitioner also gave details regarding the abovementioned lawsuit against his previous employer to collect back wages. He said that billings show that he is entitled to $60,000 plus interest.

On February 10, 2005, the settlement officer sent petitioner a letter with her preliminary determination. She stated her position that petitioner had "dissipated assets" with a disregard of his outstanding tax liabilities when he sold his interest in FMC and refinanced his home. She reasoned that at the time the transactions occurred, the outstanding assessed balances due to the IRS exceeded the amounts realized from the dissipated assets. In addition, she noted that none of the funds were remitted to the IRS, and she took the position that petitioner did not use any of the funds for necessary expenses. She said that unless petitioner increased his offer to $163,158 ($30,000 initial offer amount plus 100 percent of the dissipated asset values), she would assume that petitioner was not interested in pursuing the matter further, and that she would recommend that Appeals issue a notice of determination.

The settlement officer indicated that her preliminary determination did not represent a final amount determined to be an acceptable offer. She noted that she did not include in the reasonable collection potential calculation any amounts for

petitioner's interest in his civil lawsuit, his ownership interest in his medical practice, or his interest in Pontchartrain Lithotripsy.

On March 2, 2005, petitioner responded to the preliminary determination letter. In his letter he said that when he "lost his job" practicing with another urologist in 2002, he accumulated substantial debt setting up his new medical practice and paying necessary living expenses and fell behind on his child support payments. The letter claimed that the payments made from the funds realized from the FMC sale in July and home refinancing in September 2003, were necessary to pay judgments rendered against him and to avoid additional legal proceedings. Petitioner provided details on the distribution of the proceeds of these two transactions. He alleged that he distributed the $108,000 from the sale of his interest in FMC as follows:

| Payee | Payment Amount |
| --- | --- |
| City Bank (credit card debt)* | $13,591.78 |
| City Bank (credit card debt)* | 12,468.72 |
| First USA (credit card payoff) | 2,745.69 |
| MBNA (credit card payoff)** | 30,000.00 |
| IRS (2003 estimated tax payment) | 15,600.00 |
| Child support payments | 5,464.02 |
| Hibernia Bank (loan repayment) | 8,820.20 |
| Whitney Bank (credit line) | 4,709.59 |
| William A. Neilson (legal fees) | 4,000.00 |
| Paul Lea (legal fees) | 5,000.00 |
| Diane Cherry (legal fees) | 3,000.00 |
| Pedalhore (accounting fees) | 1,600.00 |
| Fintech (accounting fees) | 1,000.00 |

  *Payment pursuant to court judgments
 **Lawsuit filed against petitioner

From the refinance of his residence petitioner received a net amount of $25,158. Petitioner used $11,000 to pay delinquent child support and transferred the remaining $14,158 to his professional corporation (which was used to pay a supplier, malpractice insurance, delinquent telephone charges, and payroll).

Also in his response to the preliminary determination, petitioner asserted that the attorney's fees were an allowable necessary expense because they were necessary for his representation before the IRS with respect to his current tax matters. He closed the letter by saying he thought negotiation of an offer-in-compromise was possible given his belief that he did not dissipate assets and that he is allowed to claim attorney's fees as an expense.

On March 8, 2005, the settlement officer sent a letter to petitioner stating that her positions on the dissipated assets and attorney's fees remained unchanged. Petitioner did not respond to this letter and never increased his offer.

On April 8, 2005, Appeals issued petitioner a notice of determination sustaining the proposed collection actions. The summary of determination concluded that petitioner's proposed collection alternative was not a viable option. The notice indicated Appeals' finding that the IRS could collect more than the $30,000 offer. The notice referred to the discovery of the

dissipated assets during consideration of the offer-in-compromise.  The notice acknowledged the $15,600 payment to the IRS but pointed out that the remaining $117,558 was distributed to other creditors.  It noted that petitioner was given the opportunity to increase his offer but declined to do so.  The notice also stated that

> The proposed levy action balances the need for efficient collection with the concern that it be no more intrusive than necessary because your offer-in-compromise does not outweigh the government's need for efficient collection of your tax liabilities.  Your collection alternative was considered however we find that it is not a viable alternative given the facts and evidence raised.

The settlement officer's Appeals Case Determination (Case Determination) reflects that in recommending petitioner's offer based on doubt as to collectibility be rejected, she calculated petitioner's future income potential plus his net realizable equity (NRE) in assets to get the reasonable collection potential for the case.

In determining petitioner's NRE, the settlement officer decided that petitioner had dissipated assets in disregard of his tax liabilities when he sold his interest in FMC and when he refinanced his home.  She considered the assets dissipated because petitioner realized the funds after his tax liabilities for 1996-2002 had accrued and after the amounts due for 1997-2001 were assessed, and he used all of the funds to pay other

creditors, with the exception of the $15,600 payment to the IRS. She determined that 100 percent of the $133,158 received from the dissipated assets should be included in petitioner's NRE with the possible exception of the $15,600 paid to the IRS, the $5,000 legal fees incurred in the lawsuit against his former employer, and the $5,464 paid for child support. She reached this conclusion despite recognizing that the assets were dissipated before the offer-in-compromise was made. The settlement officer did not include any amount for the value of petitioner's residence in NRE, having determined that he had no equity. She also expressed doubt as to whether petitioner reported an accurate value for his interest in his medical corporation, noting the comparatively low value of equipment totaling $3,630 given that the business had gross income in excess of $300,000 in 2003. The settlement officer did not account for petitioner's interests in his medical corporation or Pontchartrain Lithotripsy in calculating NRE. The settlement officer determined petitioner's future income collection potential to be $946 per month, which, over 60 months (the multiplier for a short-term deferred payment offer) amounted to $56,760.

In response to the notice of determination, petitioner filed a petition with this Court.

## Discussion

Before a levy may be made on any property or right to property, a taxpayer is entitled to notice of the Commissioner's intent to levy and notice of the right to a fair hearing before an impartial officer of the IRS Appeals Office. Secs. 6330(a) and (b), 6331(d). Section 6320 provides that after the filing of a Federal tax lien under section 6323, the Secretary shall furnish written notice. This notice must advise the taxpayer of the opportunity for administrative review in the form of a hearing, which is generally conducted consistent with the procedures set forth in section 6330(c), (d), and (e). Sec. 6320(c).

Where, as here, the underlying tax liability is not at issue, our review of the notice of determination under section 6330 is for abuse of discretion. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 182 (2000). This standard does not require us to decide what we think would be an acceptable offer-in-compromise. Murphy v. Commissioner, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006). Rather, our review is to determine whether respondent's rejection of petitioner's offer-in-compromise was arbitrary, capricious, or without sound basis in fact or law. Id.

At the hearing, taxpayers may raise challenges to "the appropriateness of collection actions" and may make "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise." Sec. 6330(c)(2)(A). The Appeals officer must consider those issues, verify that the requirements of applicable law and administrative procedures have been met, and consider "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the person [involved] that any collection action be no more intrusive than necessary." Sec. 6330(c)(3)(C). As his collection alternative, petitioner chose to make an offer-in-compromise. In the case before us, petitioner disputes respondent's rejection of his offer-in-compromise.

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(c) provides that the Secretary shall prescribe guidelines for evaluation of whether an offer-in-compromise should be accepted. The decision whether to accept or reject an offer-in-compromise is left to the Secretary's discretion. Fargo v. Commissioner, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The section 7122 regulations set forth three grounds for compromise of a taxpayer's liability. These grounds are doubt as

to liability, doubt as to collectibility, and the promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs. Petitioner seeks a compromise based on doubt as to collectibility.

The Secretary may compromise a tax liability based on doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the liability. Sec. 301.7122-1(b)(2), Proced. & Admin. Regs. Generally, under the Commissioner's administrative procedures, an offer-in-compromise based on doubt as to collectibility will be acceptable only if it reflects the taxpayer's "reasonable collection potential". Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517. Both parties appear to agree that petitioner's reasonable collection potential is substantially less than his tax liability which, as above noted, stood at more than $773,368, as of January 1, 2005. The parties obviously disagree as to petitioner's collection potential.

The IRS has developed guidelines and procedures for the submission and evaluation of offers to compromise under section 7122. Rev. Proc. 2003-71, supra. In furtherance thereof, the Internal Revenue Manual (IRM) contains extensive guidelines for evaluating offers-in-compromise. 1 Administration, Internal

Revenue Manual (CCH), sec. 5.8, at 16,253. Both petitioner and respondent focus substantial attention in their briefs to the issue of "Dissipation of Assets", discussed below.

The IRM provides in part, in "Dissipation of Assets", section 5.8.5.4, at 16,339-6, the following:

> (1) During an offer investigation it may be discovered that assets (liquid or non-liquid) have been sold, gifted, transferred, or spent on non-priority items and/or debts and are <u>no longer available to pay the tax liability</u>. This section discusses treatment of the value of these assets when considering an offer in compromise.

>   *  *  *  *  *  *  *

> (2) Once it is determined that a specific asset has been dissipated, the investigation should address whether the value of the asset, or a portion of the value, should be included in an acceptable offer amount.

> (3) Inclusion of the value of dissipated assets must clearly be justified in the case file and documented on the ICS/AOIC history. * * *

> (4) When the taxpayer can show that assets have been dissipated to provide for necessary living expenses, these amounts should not be included in the reasonable collection potential (RCP) calculation.

>   *  *  *  *  *  *  *

> (5) If the investigation clearly reveals that assets have been dissipated with a disregard of the outstanding tax liability, <u>consider including the value in the reasonable collection potential (RCP) calculation</u>. [Emphasis added.]

It is not totally clear how dissipated assets can be "no longer available to pay the tax liability" (see (1), above) while at the same time included in the "reasonable collection potential (RCP) calculation" (see (5), above).

The settlement officer apparently considered herself required to apply this rather cryptic guideline, and under an abuse of discretion standard we are not at liberty to challenge her judgment that it should be used. However, under the abuse of discretion standard, we must assure that the guideline is correctly applied.

The Appeals Case Determination states that

Appeals preliminary determination of Dr. Samuel's net realizable equity (NRE) in his assets is that it should include 100% of his dissipated assets totaling $133,158 with the possible exception of the $15,600 paid for his 2003 estimated tax payment, his legal fees of $5,000 incurred in association with his civil law suit against his prior employer and $5,464 paid for child support. He has no net realizable equity in his personal residence given that quick sale value (QSV) is used and offset against his mortgage of $322,000. Since his mortgage exceeds the QSV of $320,000 (80% of FMV determined to be at $400,000), he has no equity to include in his NRE. Appeals believes that his interest in his medical corporation exceeds that which was reported at the face-to-face hearing to be the value of the equipment totaling $3,630. This is an on-going business that had gross income in excess of $300,000 in 2003.

The Appeals Case Determination goes on to state that

Dr. Samuel was provided the opportunity to increase his offered amount to at least include amounts he realized pursuant to his dissipated assets in order that his offer receive further consideration. He declined to so do.

The $15,600 which Dr. Samuel paid for his 2003 estimated tax payment should have been excluded from the dissipated assets category, and if Appeals was in doubt about the includability of the $5,000 incurred in association with Dr. Samuel's civil law suit and the $5,464 paid for child support, these amounts should have been excluded also. It was an abuse of discretion not to do so.

It is represented in his brief that petitioner has been current on all of the filings and payments of his taxes, starting with 2003. It appears from the Appeals Case Determination that petitioner has in fact minimal assets from which cash could be realized, but that he has a medical practice that produces a fairly substantial amount of income. Clearly, then, any IRS recovery from petitioner would have to come principally, if not entirely, from his medical practice income.

In connection with its consideration of petitioner's offer-in-compromise, Appeals prepared the following table to illustrate petitioner's future income potential. The Case Determination states that the table is intended to show that petitioner's future income potential is more than his $30,000 offer.

| Total Income Source | Gross | Necessary Living Expenses | Claimed | Allowed |
|---|---|---|---|---|
| Wages/salaries T/P | $7,963 | Natl.Std expenses | $976 | $953 |
| Wages/salaries spouse | | Housing & utilities | 1,024 | 1,034 |
| Interest | | Transportation | 0 | 0 |
| Net business | | Health care | 50 | 100 |

| | | | |
|---|---|---|---|
| income | Taxes | 2,470 | 2,180 |
| Rental income | Court ordered | 2,750 | 2,750 |
| Pensions T/P | pmts. | | |
| | Child/dependent | | |
| | care | | 0 |
| Pensions spouse | | | |
| Child support | Life insurance | | |
| Alimony | Secured debts | | |
| Other: | Representation | 250 | 0 |
| IRA dstrbtn. | Other: | | |
| | | | |
| Total income   7,963 | Total expense | 7,520 | 7,017 |
| | | | |
| Net difference | | | 946 |

Net difference times (a, b or c) = FIP [Future income potential]

Net difference = $946 x 60             $56,760

(a)  If the taxpayer is making a cash offer (offering to pay within 90 days or less) multiply the net difference by 48 or the number of months remaining on the statute.

(b)  If the taxpayer is making a short term deferred payment offer (offering to pay within 2 years) multiply the net difference by 60 or the number of months remaining on the statute, whichever is shorter.

(c)  If the taxpayer is making a deferred payment offer (offering to pay over the life of the statute), use the deferred payment chart to determine the number of months.

Petitioner points out that 2 Administration, Internal Revenue Manual (CCH), section 5.15.1.10(3), at 17,662, allows as a necessary expense accounting and legal fees if representation before the IRS is needed or meets the necessary expense tests. The costs must be related to solving the current controversy.  In calculating petitioner's future income potential, the settlement officer failed to allow monthly payments of $250 which petitioner was making to his tax attorney in connection with the current controversy.  The corrected income potential would thus be $41,760.

The Appeals Case Determination takes the position that Appeals was not required to counteroffer petitioner's offer-in-compromise, but petitioner points out that 1 Administration, Internal Revenue Manual (CCH), section 5.8.4.6., at 16,308, provides that in the course of processing the case, if the taxpayer's offer must be increased in order to be recommended for acceptance, the taxpayer must be contacted by letter or telephone advising the taxpayer "to amend the offer to the acceptable amount".  In the present case, petitioner should have been advised that instead of 100 percent of the dissipated assets, totaling $133,158, an acceptable amount would be $133,158 less $26,064 ($15,600 plus $5,000 plus $5,464), or $107,094.  Appeals' failure to do so was an abuse of discretion, and we so hold.

Petitioner should be given the opportunity to revise his offer-in-compromise to reflect the $107,094, referred to above. However, since petitioner appears to lack any substantial assets outside his medical practice which could provide a source for paying any compromise amount, it is obvious, as previously observed, that any payments would come from his medical earnings. The table prepared by Appeals, above, unquestionably reveals that petitioner has ample income in excess of his $30,000 offer payable over 24 months.

We shall remand this case to Appeals for a 60-day period within which petitioner may, if he so chooses, revise the amount of his offer-in-compromise and suggest new terms of payment in accordance herewith.

<u>An appropriate order</u>

<u>will be issued</u>.