T.C. Memo. 2004-13

UNITED STATES TAX COURT

CHARLES G. AND ELIZABETH A. FARGO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9492-02L.          Filed January 16, 2004.

Dennis N. Brager, for petitioners.

Linette B. Angelastro, for respondent.

MEMORANDUM OPINION

HOLMES, Judge:  The petitioners, Charles and Elizabeth
Fargo, bought two tax shelters 20 years ago.  When respondent
disallowed their losses and sent them a notice of deficiency in
2000, time and the compounding of interest had nearly quadrupled
their total bill.  Petitioners paid the tax portion of the
deficiencies in full.  We consider whether respondent abused his

discretion under section 6330 in refusing to compromise the remainder.

## Background

Petitioners filed joint returns for the tax years 1983 and 1984. For 1983, they claimed a Schedule E loss of $30,767 attributable to their interest in a partnership named Jackson & Associates (Jackson). For 1984, they claimed Schedule E losses of $2,749 attributable to their interest in Jackson and $28,996 attributable to their interest in another partnership, Smith & Asher Associates (Smith/Asher). Both Jackson and Smith/Asher were partners in other partnerships: Jackson in a partnership called Wilshire West Associates (Wilshire), and Smith/Asher in a partnership called Redwood Associates (Redwood). All these partnerships were subject to the TEFRA provisions of sections 6221-6234.[1]

These partnerships were all affiliated with a group of tax shelters known as the Swanton Coal Programs, a coal mining venture which produced much more litigation than coal. See, e.g., Smith v. Commissioner, 92 T.C. 1349 (1989); Beagles v.

---

[1] Section references are to the Internal Revenue Code of 1986, as amended. Secs. 6221 to 6234 were added by the Tax Equity and Fiscal Responsibility Act (TEFRA) of 1982, Pub. L. 97-248, sec. 402(a) 96 Stat. 648, and provide for the determination of partnership items at the partnership, rather than at the individual partner, level. The Commissioner is generally unable to assess a deficiency relating to a TEFRA partnership item until after the completion of partnership-level proceedings. See generally Katz v. Commissioner, 116 T.C. 5, 8 (2001), revd. on other grounds 335 F.3d 1121 (10th Cir. 2003).

Commissioner, T.C. Memo. 2003-67; Kelley v. Commissioner, T.C. Memo. 1993-495. In Kelley, we concluded that "The formation and operation of the Swanton Coal Programs appear to have as substance little more than a grandiose serving of whimsy", and that they were "nothing more than an elaborate scam to provide highly leveraged deductions for nonexistent expenses." We therefore disallowed the partnership losses at issue, and sustained the Commissioner's imposition of increased interest pursuant to section 6621(c) because the programs were so clearly tax-motivated transactions.

Because the programs used tiered partnerships, however, our decision in Kelley did not automatically resolve the tax liability of partners in Jackson or Smith/Asher, and the Commissioner continued to negotiate with the tax matters partners (TMPs) for these partnerships until finally reaching closing agreements with both of them by mid-1999. After Jackson and Smith/Asher concluded their closing agreements, respondent contacted petitioners in November 1999, sending them a notice of examination that proposed changes to their 1983 and 1984 returns. In March 2000, respondent sent out notices of deficiency. Petitioners paid the entire tax portion of their outstanding 1983 and 1984 deficiencies (amounting to $23,977), but did not pay any of the accrued interest (which had grown to more than $100,000). After assessing the deficiencies, respondent sent petitioners a

final notice of intent to levy. Petitioners timely requested a hearing, the focus of which was their offer to compromise the nearly two decades of compound interest for $7,500. The Appeals officer rejected their offer and determined that a levy was appropriate. This action followed. The case was calendared for trial in California, where the Fargos resided when they filed their petition. The parties stipulated the relevant facts, and moved to submit the case for decision without trial under Rule 122.

## Discussion

Section 7122(c) directs the Secretary to prescribe guidelines for determining whether to accept or reject specific offers in compromise. Under section 301.7122-1T(b), Temporary Proced. & Admin. Regs., 64 Fed. Reg. 39024 (July 21, 1999),[2] there are three grounds for compromise: Doubt as to liability, doubt as to collectibility, and promotion of effective tax administration. Petitioners argue that their compromise offer met two of the temporary regulations' separate standards for acceptance "in furtherance of effective tax administration"-- collection of the full amount would cause them economic hardship,

---

[2] As petitioners submitted their offer in compromise after July 21, 1999, and before July 18, 2002, it is governed by the temporary regulations that were then in force. (The portions relevant to this case survived in substantially similar form in the final regulations at sec. 301.7122-1(b), Proced. & Admin. Regs.)

see sec. 301.7122-1T(b)(4)(i), Temporary Proced. & Admin. Regs., supra; and, even if it did not, would because of "exceptional circumstances" be "detrimental to voluntary compliance by taxpayers" by creating doubt as to the fair administration of the tax laws, see sec. 301.7122-1T(4)(ii), Temporary Proced. & Admin. Regs., supra.

Respondent rejected both arguments. He concluded that petitioners could fully satisfy both their tax debt and their foreseeable expenses without economic hardship. He also concluded that they had failed to show "exceptional circumstances" sufficient to justify accepting their compromise.

We examine each issue in turn, mindful that our review under section 6330 is for abuse of discretion. See Davis v. Commissioner, 115 T.C. 35, 39 (2000). This standard does not ask us to decide whether in our own opinion the offer in compromise should have been accepted, but whether the Commissioner exercised his "discretion arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

A.   Hardship

Petitioners suggest that although they currently enjoy fairly substantial means, their economic future is tainted by a diagnosis that petitioner Charles Fargo suffers from a progressive neurological condition that may eventually require

round-the-clock nursing care.  They claim that such care is so expensive (almost $90,000/year, by their estimate) that it would cause them to wholly consume their liquid assets in 10 years. They argue that respondent should have accepted their offer as a viable alternative to a levy because of this foreseeable economic hardship.

As we already noted, we look to respondent's determination for anything that runs counter to established law or suggests the lack of a "sound basis in fact or law."  In that light, we decline to second-guess his determination that petitioners' resources are sufficient to warrant collection of the entire outstanding liability.  The record compiled by respondent indicates that petitioners possess substantial wealth--over a million dollars in total assets (if equity in real estate is counted) and a large income even in their retirement.  While petitioners certainly present a legitimate view of their possible future needs, we do not find that the record shows respondent to have abused his discretion in concluding that petitioners can pay their debt without suffering substantial economic hardship.

B.    Exceptional Circumstances

Petitioners also renew here the arguments in favor of a finding of "exceptional circumstances" that they made to respondent.  First, they contend the IRS had no justification for its extraordinary delay in assessing their unpaid tax liability

after we decided Kelley v. Commissioner, supra.  Quoting extensively from legislative history, petitioners argue that the delay between the adjudication of the underlying tax issues in 1993 and the first contact they received from the IRS in 1999 falls within the class of situations contemplated by Congress when it described the offer in compromise program as a method for resolving "longstanding cases * * * which have accumulated as a result of delay in determining the taxpayer's liability."  H. Conf. Rept. 105-599, at 289 (1998), 1998-3 C.B. 747, 1043.

Petitioners suggest that the IRS was at the very least complicit, and perhaps negligent or malicious, in allowing their original tax savings of $23,977 to balloon into a total liability of more than $127,000.  They allege that this IRS conduct should have compelled respondent to accept their offer in compromise.

Respondent, while acknowledging the length of time that passed between our decision in Kelley v. Commissioner, T.C. Memo. 1993-495, and his contacting petitioners, contends that it was due not to any improprieties by the IRS, but rather to the deliberate pace at which TEFRA partnership audits may progress. The partnership interests which petitioners held were not in the partnerships directly at issue in Kelley, but rather in partnerships which themselves were partners in the partnerships that Kelley analyzed.  This tiered structure meant that under TEFRA, even after Kelley, respondent had to negotiate a closing

agreement with the TMPs of the partnerships in which petitioners had an interest before starting collection activity at their level.

The Appeals officer determined that the delay in petitioners' learning of their snowballing liability is a matter they should address with the TMPs of their partnerships. We agree. TEFRA contemplates that it is generally a TMP's responsibility to keep his partners informed.[3] Sec. 6233(g); sec. 301.6223(g)-1T, Temporary Proced. & Admin. Regs., 52 Fed Reg. 6785 (Mar. 5, 1987). We decline to decide that the failure of the IRS to contact petitioners sooner is reason to compel respondent to accept a settlement of approximately 7 percent of petitioners' interest liability.

We do agree with petitioners that there is something disconcerting about their not receiving notice of the ramifications for them of the Swanton coal litigation until 1999. Indeed, respondent's determination notes that petitioners may have received no correspondence at all from their TMPs since

---

[3] One part of respondent's determination regarding the long delay between Kelley and assessment does seem mistaken. The Appeals officer found that "no link had been established" between the Swanton Coal Programs and petitioners' tax liabilities. This statement is fundamentally in error if it was intended to mean that Kelley did not at least indirectly affect petitioners' tax liabilities. Nevertheless, it appears to be dictum. Regardless of the interrelation of the partnerships involved in the Swanton Programs, respondent is correct that legal responsibility for more promptly notifying petitioners and trying to resolve their partnerships' tax issues lay ultimately with their TMPs.

1991. We believe however, that if there is a remedy, it does not lie in denying the Government the interest to which it is legally entitled.

Petitioners also call our attention to the decision in Beagles v. Commissioner, T.C. Memo. 2003-67, which indicates that the Commissioner abated over 6 years' worth of interest arising out of a similar liability for the taxpayers in that case, which also arose from the Swanton Coal Programs. Petitioners argue that this makes it inequitable for respondent to have denied their offer in compromise, which sought only similar relief.

We are unpersuaded. The Commissioner's decision to grant interest abatement to one Swanton participant would hardly suffice to show that he abused his discretion in denying another's request for an offer in compromise. Different factors are relevant to each form of relief, and of course, different taxpayers face different circumstances: in Beagles, the Commissioner may have abated interest at least in part because the taxpayer became terminally ill during the collection process. Id.

In any event, review for abuse of discretion allows different decisions even in similar cases, so long as none represent a clear error in judgment by the decisionmaker. Rasbury v. IRS, 24 F.3d 159, 168 (11th Cir. 1994).

Decision will be entered for respondent.