T.C. Memo. 2019-4

UNITED STATES TAX COURT

JOHN F. CAMPBELL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5644-12L.                    Filed February 4, 2019.

<u>George W. Connelly, Jr.</u>, for petitioner.

<u>Susan Kathy Greene</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>:  This collection due process (CDP) case commenced in

response to a Notice of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330 (notice of determination) upholding a proposed levy

collection action and a notice of Federal tax lien (NFTL) regarding petitioner's

[*2] unpaid tax liability for tax year 2001. The Internal Revenue Service (IRS or respondent) issued two supplemental notices of determination during the course of petitioner's CDP proceedings, which also sustained the proposed levy collection action and the NFTL. The issue for our consideration is whether respondent's determination to sustain the proposed levy action regarding the unpaid tax liability was an abuse of discretion.[1]

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times. We round all monetary amounts to the nearest dollar.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Connecticut when he timely filed his petition.

Petitioner timely filed Form 1040, U.S. Individual Income Tax Return, for 2001.[2] On his Form 1040 petitioner reported $201,519 of taxable income and a tax liability of $59,354. On July 8, 2002, respondent assessed petitioner's 2001 tax liability as reported on his Form 1040 and issued him a refund of $17,475.

---

[1]Petitioner is not contesting the NFTL.

[2]Petitioner and his wife file separate returns.

[*3]  Near the end of 2002 petitioner and his family moved to St. Thomas in the U.S. Virgin Islands.  During July 2002 petitioner had engaged an estate planning attorney to start the process of setting up a family trust.  On April 26, 2004, petitioner established the First Aeolian Islands Trust (Trust), an irrevocable grantor trust for Federal tax purposes, in Nevis, West Indies.  The duration of the Trust is 99 years unless terminated earlier by the trustee.  Petitioner and his family are named beneficiaries of the Trust, but he anticipates receiving no benefit from the Trust.

Petitioner funded the Trust with a $5 million contribution.  At the time of the contribution petitioner's net worth was approximately $25 million.  No contributions to the Trust have been made since petitioner's initial contribution in 2004.  As the grantor of the Trust petitioner is required to report on his personal tax returns any tax consequences of the Trust's activities.

Meridian Trust Co., Ltd. (Meridian), in Charlestown, Nevis, West Indies, was the originally appointed trustee.  Peter Meara was appointed the Trust Protector.  Petitioner maintains no control over the trustee to make distributions or investments.  Through the Trust Protector petitioner can request that the trustee be changed, but he cannot force such action.  Petitioner requested that the Trust

[*4] Protector change the trustee to Southpac Trust Nevis, Ltd., the current trustee, because he felt that Meridian was overbilling the Trust.

During 2001 petitioner invested in a custom adjustable rate debt structure (CARDS) transaction, about which he consulted a law firm before making his investment. Petitioner did not report his CARDS transaction on his 2001 Federal tax return. On March 18, 2002, the IRS issued Notice 2002-21, Tax Avoidance Using Inflated Basis, 2002-1 C.B. 730, requiring taxpayers to report any involvement in CARDS transactions. On May 10, 2004, the IRS notified petitioner that his 2001 Form 1040 was being submitted for examination.

In November 2006 petitioner moved back to the United States to pursue real estate opportunities in the Gulf Coast region. He made a $27 million investment in the "GO-Zone Initiative", which resulted in a $10,490,130 net operating loss (NOL). Under the Gulf Opportunity Zone Act (GO Zone)[3] petitioner was able to deduct that NOL against income reported on previously filed Federal tax returns. At the time of his investment, petitioner estimated that his net worth was approximately $19 million, consisting of cash and liquid investments.

---

[3]In December 2005 Congress passed the Gulf Opportunity Zone Act of 2005, Pub. L. No. 109-135, 119 Stat. 2577, in response to the devastation caused by Hurricane Katrina in August 2005. The legislation provided tax relief and incentives for individuals and businesses within the GO Zone. The GO Zone includes various counties and parishes in Alabama, Louisiana, and Mississippi.

**[\*5]**  Petitioner's investments in the Gulf Coast consisted of both residential and commercial real estate in Alabama, Louisiana, and Mississippi.  The investments were structured through limited liability companies (LLCs) which purchased each asset.  In addition to his personal cash investment, petitioner personally guaranteed all of the loans the LLCs executed to purchase the assets.  Petitioner expected a 7% return on his cash investment.  After making his cash investment in the GO Zone, petitioner had approximately $6.5 million remaining in liquid assets.

In the summer of 2009 petitioner learned that approximately half of the residential properties owned by Slidell Property Management, LLC (Slidell), one of the LLCs that purchased property in Louisiana through the GO Zone, contained Chinese drywall.  The Chinese drywall made the properties uninhabitable.  The lender for the Slidell properties foreclosed on the assets in 2011.  At the time of foreclosure, the outstanding balance on the loan for the Slidell assets was approximately $4.5 million.  The lender sold the properties in 2011 for approximately $1.35 million.

When the lender foreclosed on the Slidell properties, Louisiana law provided borrowers with litigious rights to repurchase properties that had been sold by a lender if there was an underlying debt obligation at the time of the sale. Petitioner brought a suit against the buyer of the Slidell properties in March 2014

[*6] and received a favorable ruling allowing him to repurchase the properties for $1.5 million.

Petitioner, as the sole member of Slidell, sold Slidell's assets to Clairise Court, LLC (Clairise Court), for $1.5 million. Petitioner was also the sole member of Clairise Court. Clairise Court borrowed the funds for the purchase from Antilles Offshore Investors, Ltd., a wholly owned LLC of Antilles Master Fund.

Petitioner had created Antilles Master Fund in December 2013. Antilles Master Fund had two investors: petitioner and Liberty Mountain Corp. (Liberty). Petitioner invested $40,000 in Antilles Master Fund. Liberty was a wholly owned corporation of the Trust, which the Trust had the power to create. Petitioner made Liberty aware of his conflicts of interest regarding this transaction.

Petitioner continued to have an interest in Clairise Court. He personally guaranteed a $4.5 million loan for the LLC. Petitioner also continued to have an interest in only one of the other LLCs formed to purchase property through the GO Zone. The remaining GO Zone properties purchased through LLCs were sold or foreclosed on by lenders. Petitioner personally guaranteed all of the other LLCs' loans and remains personally liable on those loans for approximately $600,000 to $700,000.

**[\*7]**   On July 2, 2007, respondent issued to petitioner a statutory notice of deficiency for 2001.  On Form 4549-A, Income Tax Exemption Changes, respondent made an upward adjustment to petitioner's income from $201,519, as reported on his Form 1040, to $13,886,234.

In response to the statutory notice of deficiency petitioner filed a petition with this Court.[4]  The parties reached a settlement that entitled petitioner to deduct his NOL carryback from his GO Zone investment against his 2001 increased income tax liability.  On March 11, 2010, the Court entered a decision determining that for tax year 2001 petitioner was liable for a deficiency of $1,135,192 and a section 6662(a) accuracy-related penalty of $113,519.  On April 19, 2010, respondent timely assessed the additional tax and penalty.

On August 31, 2010, respondent issued a final notice of intent to levy (levy notice), informing petitioner of respondent's intent to collect his 2001 unpaid tax liability and providing notice of his right to a CDP hearing.  Respondent filed three NFTLs in September 2010.  On September 14, 2010, respondent sent petitioner notice of the NFTL filings, advising him that NFTLs had been filed and informing him of his right to a CDP hearing.

---

[4]Campbell v. Commissioner, T.C. Dkt. No. 9699-07 (Mar. 11, 2010).

**[\*8]**  Petitioner timely sent Forms 12153, Request for a Collection Due Process or Equivalent Hearing, in response to both the levy notice and the notice of NFTL. In his request for the levy CDP hearing, petitioner disagreed with the proposed levy and requested an installment agreement or an offer-in-compromise (OIC) as a collection alternative.  During the CDP hearing petitioner asked that his account be placed in currently-not-collectible status.

After submitting petitioner's 2001 return for examination, respondent opened examinations of petitioner's subsequent years' returns.[5]  Petitioner made his request for currently-not-collectible status for one year to allow time for him to resolve some of his financial problems.  Respondent informed petitioner that his account could not be placed in currently-not-collectible status given the open examinations for other years.

On January 31, 2012, respondent issued a notice of determination upholding the proposed levy action.  On March 1, 2012, petitioner timely filed a petition with this Court.  Respondent filed a motion for summary judgment on November 5, 2013.  The Court held a hearing regarding the motion for summary judgment and

_____

[5]Each of the examinations for petitioner's subsequent tax years was resolved in his favor and resulted in no additional deficiency.

**[*9]** ordered that the motion be held in abeyance and that the case be remanded to the IRS Appeals Office.

On March 28, 2014, petitioner submitted Form 656, Offer in Compromise, on the basis of doubt as to collectibility. He offered to compromise all outstanding liabilities for $12,603. He also submitted Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, with an attached "explanation of circumstances". Respondent conducted the supplemental CDP hearing via correspondence. Using the guidelines provided by the Internal Revenue Manual (IRM) and national and local standards for living expenses, respondent calculated that petitioner's reasonable collection potential (RCP) was $1,499,698. Respondent's calculation included the "net realizable equity" in the Trust of $1,493,912.

On January 14, 2016, respondent issued the first supplemental notice of determination sustaining the proposed levy. Respondent rejected petitioner's OIC because of the disparity between the offer and petitioner's RCP and for issues related to transferee, nominee, and alter ego theories.

On May 16, 2016, respondent filed a second motion for summary judgment. On June 10, 2016, petitioner filed a motion to remand proceedings to the IRS Appeals Office for further consideration and another supplemental CDP hearing.

[*10] Petitioner's motion to remand contended that respondent failed to address State law issues that could affect nominee and alter ego theories. On June 10, 2016, the Court denied respondent's second motion for summary judgment because respondent had not presented enough information regarding the Trust and the State law issues that could affect the Government's ability to reach the Trust assets. Accordingly, the Court granted petitioner's motion to remand the proceedings to the IRS Appeals Office for further consideration of State law issues.

Respondent conducted the second supplemental CDP hearing via correspondence. The Appeals officer again rejected petitioner's OIC of $12,603. She recommended that petitioner increase his offer to $1.5 million. In the second supplemental notice of determination the Appeals officer increased petitioner's RCP to more than $19.5 million. Her calculations were different from her prior calculations because she no longer included both the assets of the Trust and the $5 million used to fund the Trust; she also included as dissipated assets funds petitioner used for investments between 2006 and 2010. On June 11, 2018, respondent issued a second supplemental notice of determination formally rejecting petitioner's OIC as not in the best interest of the Government and sustaining the proposed levy.

**[*11]**                                              OPINION

Section 6330 requires the Secretary to furnish a taxpayer notice and opportunity for a hearing before an impartial officer or employee of the IRS Appeals Office before levying on the person's property.  At the hearing the person may raise any relevant issue relating to the unpaid tax or the proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives.  Sec. 6330(c)(2).  The taxpayer may challenge the existence or the amount of the underlying tax liability for any period only if she or he did not receive a notice of deficiency or did not otherwise have an opportunity to dispute the liability.  Sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 609 (2000).  No liability challenge is raised in this case.

Following the hearing the Appeals officer must determine whether proceeding with the proposed collection action is appropriate.  In making that determination the Appeals officer is required to take into consideration: (1) whether the requirements of any applicable law or administrative procedure have been met, (2) any relevant issues raised by the taxpayer, and (3) whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more

**[\*12]** intrusive than necessary. Sec. 6330(c)(3); see also Lunsford v. Commissioner, 117 T.C. 183, 184 (2001).

I.      Standard of Review

Where the validity of the underlying tax liability is properly at issue, we review the determination de novo. Sego v. Commissioner, 114 T.C. at 610. The Court reviews administrative determinations made by the Appeals Office regarding nonliability issues for abuse of discretion. Goza v. Commissioner, 114 T.C. 176, 182 (2000). The validity of petitioner's underlying tax liability is not at issue here. Accordingly, we review for abuse of discretion.

In determining whether an abuse of discretion exists, we consider whether the determination was arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). The Court does not conduct an independent review of what would be an acceptable OIC. Id. If the Appeals officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Link v. Commissioner, T.C. Memo. 2013-53, at *12.

[*13] II.    Abuse of Discretion

Section 7122(a) authorizes the Secretary to compromise any civil or criminal case arising under the internal revenue laws. Section 7122(d) authorizes the Secretary to prescribe guidelines for officers and employees of the IRS to determine whether an OIC is adequate. Regulations implementing section 7122 set forth three grounds for the compromise of a liability: (1) doubt as to liability, (2) doubt as to collectibility, and (3) promotion of effective tax administration. Sec. 301.7122-1(b), Proced. & Admin. Regs.

Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the tax liability. Id. subpara. (2). Generally, under respondent's administrative pronouncements, an OIC based on doubt as to collectibility will be acceptable only if the offer reflects the RCP of the case; i.e., that amount less than the full liability that the IRS could collect through means such as administrative and judicial collection remedies. Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517; see also Murphy v. Commissioner, 125 T.C. at 309.

The Appeals officer rejected petitioner's OIC of $12,603 because she calculated petitioner's RCP as $19.5 million, which included dissipated assets, amounts collectible from third parties, and assets beyond the reach of the

[*14] Government. Petitioner contends that the Appeals officer abused her discretion by failing to consider relevant issues he raised during the CDP hearings.

When a taxpayer submits an OIC based on doubt as to collectibility, the Appeals officer follows IRM guidelines to determine the taxpayer's RCP. IRM pt. 5.8.4.3 (Jan. 18, 2018). Those guidelines consist of determining: (1) assets, including dissipated assets, (2) future income, (3) amounts collectible from third parties, and (4) assets available to the taxpayer but beyond the reach of the Government. Id. pt. 5.8.4.3.1 (Apr. 30, 2015). The IRS may reject an OIC when the taxpayer's ability to pay is greater than the amount she or he proposes to pay under the compromise proposal. See Johnson v. Commissioner, 136 T.C. 475, 486 (2011), aff'd, 502 F. App'x 1 (D.C. Cir. 2013). Under IRS procedures, respondent will not accept a compromise that is less than the RCP value of the case absent a showing of special circumstances. See Rev. Proc. 2003-71, sec. 4.02(2). The IRS has no duty to negotiate with a taxpayer before rejecting an OIC. Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), aff'g T.C. Memo. 2004-13.

A. Dissipated Assets

According to the IRM, including dissipated assets in calculating the RCP is applicable only "in situations where it can be shown the taxpayer has sold, transferred, encumbered or otherwise disposed of assets in an attempt to avoid the

**[\*15]** payment of the tax liability" or otherwise used the assets "for other than the payment of items necessary for the production of income or the health and welfare of the taxpayer or their family, after the tax has been assessed or during a period up to six months prior to or after the tax assessment." IRM pt. 5.8.5.18(1) (Mar. 23, 2018). The IRM instructs Appeals officers to use a three-year look-back period, from the date the offer is made, to determine whether it is appropriate to include dissipated assets in the RCP calculation. The look-back period includes the year that an OIC is submitted. Id. pt. 5.8.5.18(2). An Appeals officer is allowed to look beyond the three-year period of the offer submission if the transfer of the asset(s) occurred within six months before or after the assessment of the tax liability. Id. (flush language).

Petitioner was not given the opportunity to submit an OIC until after this Court remanded the CDP proceedings to the Appeals Office. He submitted his OIC on March 28, 2014. Accordingly, the Appeals officer should have looked only to 2012 for any dissipated assets. However, under the IRM guidelines, she could have looked back to the assessment date, April 19, 2010, for any dissipated assets if there was a transfer of assets within the six months before or after the assessment date.

**[\*16]** In the RCP calculation respondent included, as dissipated assets, the funds petitioner had transferred to the Trust. Petitioner contributed $5 million to the Trust on April 26, 2004, 6 years before the assessment period look-back and 10 years before he made his OIC. This was his only contribution to the Trust. On May 10, 2004, after making the Trust contribution, petitioner was notified that his 2001 return was under examination. Petitioner was not aware of a potential audit examination of his 2001 tax return or any increased income tax liability that might arise from the examination until after making his contribution to the Trust.

Even if petitioner was aware of a potential tax liability, his net worth after making the contribution to the Trust exceeded any potential tax liability arising from the examination of his 2001 Federal tax return. During the CDP proceedings, petitioner demonstrated that his net worth was $19 million in 2006. This amount would have more than covered the deficiency for 2001. We find that it was an abuse of discretion for the Appeals officer to include the Trust assets as dissipated assets.

Respondent's second supplemental notice of determination also concludes that, although petitioner's net worth exceeded $19 million in 2006, by 2010 he had $3.5 million of negative equity in his investments. Respondent asserted that in addition to the assets held by the Trust, the funds petitioner used for the

[*17] production of income between 2006 and 2010 should be included in petitioner's RCP as dissipated assets. Respondent contends that in 2006 petitioner knew the examination results for his 2001 tax return and asserts that if petitioner had conserved his assets he would have over $14 million available to pay his tax liability. In reaching this conclusion respondent increased petitioner's RCP to just over $19.5 million.

Respondent states that there is a reasonableness standard attached to the IRM guidelines about expenses for the production of income. Respondent concludes that it was unreasonable for petitioner to make the investments he made between 2006 and 2010 because of the loss he suffered and because he had a "duty to preserve sufficient assets" to pay a tax obligation of which respondent had made him aware.

Petitioner did not waste his wealth in an effort to deprive the Government or to shirk his financial obligation to the public fisc. In 2006 petitioner made a substantial investment in the Gulf Coast region under the GO Zone legislation. After making the investment, he still had cash on hand of more than $6 million. He was unaware of the Chinese drywall issue that affected many of the properties he purchased through the LLCs and the looming financial crisis. Respondent provides no consideration of these issues in the second supplemental notice of

[*18] determination and instead asserts that petitioner wasted his wealth in an effort to establish a loss. There is no indication in the record, and none was demonstrated at trial, that petitioner invested in the GO Zone in an attempt to avoid paying his 2001 tax liability. We find that it was an abuse of discretion for respondent to make this determination.

      B.      Amounts Collectible From Third Parties

In its first supplemental notice of determination respondent concluded that if the Trust was not considered a dissipated asset then it held assets as a transferee, nominee, or alter ego of petitioner. The second time this Court heard motions on this case, it denied respondent's motion for summary judgment and remanded the case to the Appeals Office to further determine whether the Trust could be considered a transferee, nominee, or alter ego of petitioner. The Court directed respondent to address State law issues about whether petitioner has property rights in the Trust under State law. Respondent used Connecticut law.

Section 6331(a) generally authorizes respondent to collect tax liabilities by levy against all property and property rights of the taxpayer. Section 6331 is "broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." Drye v. United States, 528 U.S. 49, 56 (1999) (quoting United States v. Nat'l Bank of Commerce, 472 U.S. 713, 719-720

**[*19]** (1985)).  The levy reaches property held by a third party if that third party is holding the property as a nominee or alter ego of the taxpayer.  See G.M. Leasing Corp. v. United States, 429 U.S. 338, 350-351 (1977).  The nominee theory focuses on whether the taxpayer is the true beneficial owner of property according to how she or he treats the property, while the alter ego theory analyzes whether a taxpayer has pierced the corporate veil.  Oxford Capital Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000).

The Supreme Court has stated that the transferee, nominee, or alter ego theory requires a two-part analysis, which looks first to State law to determine what rights a taxpayer has in property and then turns to Federal law to determine whether a taxpayer's rights in that property qualify as property or rights to property under Federal tax law.  Drye, 528 U.S. at 58.  Petitioner created the Trust in 2004 as an irrevocable grantor trust.  He and his family are named beneficiaries of the Trust.  Under section 671, petitioner is required to report all tax consequences of the Trust's activities on his personal Federal tax return.  The Trust document indicates that petitioner has no control over the trustee and cannot force the trustee to make distributions or investments.  Petitioner contends that as a beneficiary of the Trust he does not hold a property interest in the Trust assets.

[*20] In the second supplemental notice of determination respondent looks to Connecticut law and the nominee theory and notes that Connecticut has not developed a body of law with regard to nominee theory. Respondent indicates that the Supreme Court of Connecticut would adopt Federal principles of nominee theory. Respondent has not presented any evidence that Connecticut courts have applied or adopted nominee theory, and we are not in a position to say that the judicial branch of Connecticut would adopt such a theory.[6] See United States v. Snyder, 233 F. Supp. 2d 293, 296 (D. Conn. 2002) (specifically declining to make the nominee theory Connecticut State law).

Because respondent has not presented any evidence supporting the determination that petitioner has a property right in the Trust under State law, we find that respondent's determination that the Trust was a nominee of petitioner was arbitrary, capricious, and without sound basis in fact or law. Accordingly, we further find that the Appeals officer abused her discretion in making that determination.

---

[6]Respondent did not address the alter ego theory in the second supplemental notice of determination.

[*21] C.    <u>Assets Available to the Taxpayer but Beyond the Reach of the Government</u>

When a taxpayer submits an OIC based on doubt as to collectibility, the IRS' calculation of the taxpayer's RCP includes an analysis of assets available to the taxpayer but beyond the reach of the Government.  IRM pt. 5.8.4.3.1. Respondent posits that, in the alternative, because petitioner appointed the Trust Protector, and because the Trust indirectly invested in petitioner's GO Zone business ventures, petitioner maintains sufficient control over the Trust and thus has access to the Trust's assets.

The Trust's organizational documents allow the trustee to create companies for the purpose of making investments.  The Trust created Liberty as an investment vehicle.  Petitioner submitted a proposal requesting that Liberty invest in Antilles Offshore Investors, Ltd., a wholly owned LLC of Antilles Master Fund. Petitioner set forth the proposed investment and described, in detail, his personal conflicts of interest in the investment.  The investment petitioner proposed funded Clairise Court's repurchase of the properties previously owned by Slidell.  The lender on the properties owned by Slidell had foreclosed and sold the properties to an unrelated buyer.  Louisiana law allowed petitioner--through litigious rights--to repurchase the property at the price which the new buyer had paid.

**[\*22]** The trustee, in its sole discretion, directed a portion of the Trust's assets to be invested in Antilles Offshore Investors, Ltd. Petitioner could not and did not control this decision. For reasons addressed previously, we conclude that the Trust's assets are not considered assets available to petitioner but beyond the reach of the Government. Therefore, we find that the Appeals officer abused her discretion in determining that petitioner had control over the Trust's assets.

We have considered all other arguments made and facts presented in reaching our decision, and to the extent not discussed above, we conclude that they are moot, irrelevant, or without merit.

For the foregoing reasons, the supplemental notice of determination will not be sustained.

<u>An appropriate order and decision will be entered</u>.